UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA L.,[1] | ) | CIVIL ACTION NO. 4:23-CV-900 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MICHELLE KING,[2] *Acting Commissioner of the Social Security*, | ) ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Melissa L. is an adult who lives in the Middle District of Pennsylvania. She seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 7). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant

---

[1] We adopt the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts refer to social security plaintiffs by their first name and last initial.

[2] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly, this matter will be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.     BACKGROUND AND PROCEDURAL HISTORY**

On December 31, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 86; Doc. 9-3, p. 15). In these applications, Plaintiff alleged she became disabled on December 26, 2019, when she was forty-nine years old, due to the following conditions: Attention Deficit Hyperactivity Disorder; high blood pressure; Type 1 Diabetes; anxiety, and depression. (Admin. Tr. 73; Doc. 9-3, p. 2); (Admin. Tr. 86; Doc. 9-3, p. 15). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, kneel, hear, follow instructions, and deal with people and stressful situations, pay attention, and sit still. (Admin. Tr. 355; Doc. 9-6, p. 80). Plaintiff's conditions also affect her memory. *Id.* Plaintiff graduated high school. (Admin. Tr. 27; Doc. 9-2, p. 28). Before the onset of her impairments, Plaintiff worked as a cashier at Walmart for approximately fourteen years. (Admin. Tr. 136; Doc. 9-3, p. 65).

On October 16, 2019, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 141-149; Doc. 9-4, pp. 2-10). On January 21,

2021, Plaintiff's application was denied on reconsideration. (Admin. Tr. 154-155; Doc. 9-4, pp. 15-16). On March 21, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 174; Doc. 9-4, p. 35).

On November 15, 2021, Plaintiff and her counsel participated in a telephone hearing before Administrative Law Judge Charles Dominick. (Admin. Tr. 36; Doc. 9-2, p. 37). On February 11, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 13; Doc. 9-2, p. 14). On April 16, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 238; Doc. 9-4, p. 99). On September 15, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 9-2, p. 2).

On June 1, 2023, Plaintiff filed a complaint in federal court requesting judicial review of the Commissioner's final decision. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying her applications for benefits is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse and set aside the administrative decision or in the alternative remand Plaintiff's case for a new hearing. (Doc. 1, pp. 1-2).

On July 31, 2023, the Commissioner filed an answer. (Doc. 8). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 8,

¶ 7). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 9).

Plaintiff's Brief (Doc. 10), the Commissioner's Brief (Doc. 12), and Plaintiff's reply (Doc. 13) have been filed. This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process. We will also discuss the framework an ALJ uses to evaluate a claimant's symptoms.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).
[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's

---

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).
[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

---

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20] Once this burden

---

[16] 20 C.F.R. § 404.1520(a).
[17] 20 C.F.R. § 404.1520(a)(4).
[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).
[19] 20 C.F.R. § 404.1545(a)(2).
[20] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

## IV. DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1) "The ALJ's residual functional capacity assessment cannot be supported by substantial evidence as the record is devoid of any opinion whatsoever regarding [Plaintiff's] physical functional limitations." (Doc. 10, p. 7).

(2) "The ALJ erred in failing to order a consultative examination and/or failing to appoint a medical expert; the ALJ failed to fully and fairly develop the record." *Id.*

(3) "The ALJ failed to properly account for Lamberth's moderate limitations in concentration, persistence, and pace; the ALJ failed to include any limitations regarding [Plaintiff's] inability to stay on task" *Id.*

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in his decision.

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his February 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2025.

---

[21] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

(Admin. Tr. 18; Doc. 9-2, p. 19). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since December 26, 2019, the alleged onset date. *Id.*

At step two, the ALJ found that Plaintiff had the following medically determinable severe impairments: diabetes mellitus, left shoulder bursitis, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. (Admin. Tr. 19; Doc. 9-2, p. 20). The ALJ additionally identified the following medically determinable impairments as non-severe: hypertension, fatty liver, and hemorrhoids. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19-22; Doc. 9-2, pp. 20-23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> claimant must avoid overhead reaching, unprotected heights, and dangerous machinery. The claimant is limited to work involving no more than a reasoning level of 2, as defined in the Dictionary of Occupational Titles, but no fast-paced assembly line type work. The claimant is limited to no more than occasional changes in the work

setting. The claimant is limited to frequent interaction with supervisors and coworkers, but no more than occasional interaction with the public.

(Admin. Tr. 22; Doc. 9-2, p. 23).

At step four, the ALJ found that Plaintiff could not engage in her past relevant work. (Admin. Tr. 27; Doc. 9-2, p. 28).

At step five, the ALJ found that, considering Plaintiff's age,[22] education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27-28; Doc. 9-2, pp. 28-29). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: a textile worker (DOT Code 780.687-046), a price marker (DOT Code 209.587-034), and an assembler (DOT Code 706.684-022). *Id.*

    **B.**    **WHETHER THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues that substantial evidence does not support the ALJ's determination of a light work RFC because the record is "devoid of any opinion" of Plaintiff's physical functional limitations. (Doc. 10, p. 8). Plaintiff acknowledges that the record contains three medical opinions of record regarding her mental

---

[22] At the alleged onset date, Plaintiff was 49 years old, which is defined as a younger individual age 18-49. Plaintiff's age subsequently changed age category to closely approaching advanced age. (Admin. Tr. 27; Doc. 9-2, p. 28); 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963.

impairments and limitations, but none regarding physical impairments. *Id.* Instead, the record includes the opinions of two state agency medical consultants who opined that Plaintiff's medical impairments were not severe, and thus did not include any physical limitations. *Id.* The ALJ, however, determined that Plaintiff's impairments resulted in physical limitations and improperly assessed her RFC without a valid medical opinion on the proper physical limitations. *Id.* at p. 9.

Plaintiff argues that:

> …. her condition deteriorated after the state agency consulting physicians rendered their opinions. The ALJ implicitly acknowledges this deterioration when reviewing evidence regarding Lamberth's diabetic foot examinations. The ALJ specifically acknowledged that during the time period where the consultants reviewed the record (April 2020 and January 2021), Lamberth's foot examinations were normal. (Tr. 23). However, by April and July 2021, her foot examinations were positive for diminished sensation in the bilateral feet (Tr. 23, 1000, 1007). This shows a deterioration in her diabetes and her peripheral neuropathy. The state agency medical consultants could not have possibly known about the extent of her peripheral neuropathy because the positive examination findings post-date their review of the record. Thus, this presents an issue that was present *in Batdorf v. Colvin*, 206 F.Supp.3d 1012 (M.D. Pa. 2016) and Walz v. Colvin, Civ. A. No. 3:16-cv- 01600 at * 21 (M.D. Pa. February 7, 2017). The Court in *Batdorf and Walz* concluded that where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion, the ALJ's reliance on that opinion is "troubling." Walz, Civ. A. No. 3:16-cv-01600-RPC at * 21 (citing Batdorf, 2016 WL 4493356, at *9-10); *see also, e.g. Grimes v. Colvin*, Civ. A. No. 15–113E, 2016 WL 246963, at *2 (W.D.Pa. Jan. 21, 2016).
>
> As the Walz Court has held, where a Plaintiff's condition deteriorates after the state agency consultants render their opinions, an ALJ is necessarily required to speculate as to the extent of the

>deterioration and resultant limitations. *Walz,* Civ. A. No. 3:16-cv-01600-RPC at * 23. However, it is beyond the province of an ALJ to engage in speculation and make medical judgments on his own in the absence of record support. *Walz,* Civ. A. No. 3:16-cv-01600-RPC at *23 (citing *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983) (citing *Gober v. Matthews*, 574 F.2d 772 (3d Cir. 1978); *Schaaf v. Matthews*, 574 F.2d 157 (3d Cir. 1978))). As a result, when the ALJ lacks a recent medical opinion the ALJ's duty to develop the record is likely triggered and the issue must be addressed upon remand.

(Doc. 10, pp. 17-18).

In response, the Commissioner argues that "the ALJ was not required to rely on a medical opinion in deciding the legal issue of Plaintiff's residual functional capacity" and that the relevant regulations empower the ALJ to make the RFC assessment based on the entire record. (Doc. 12, p. 15). The Commissioner also argues that Plaintiff is incorrect because the record contained two assessments of her physical limitations, the state agency medical findings, and that the ALJ imposed greater limitations in consideration of the entire record, namely, Plaintiff's hearing testimony. *Id.* at p. 14-15.

There is no dispute that it is the ALJ's duty to assess a claimant's RFC.[23] Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's

---

[23] 20 C.F.R. § 404.1546(c); 20 CFR 416.946(c).

RFC.[24] Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, if they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[25]

In this case, the ALJ cited to the two medical opinions of the state agency medical consultants, but those opinions concluded that Plaintiff's medical impairments were non-severe, and she was not disabled, and thus did not include any assessments of her RFC. (Admin. Tr. 25; Doc. 9-2, p. 26). The ALJ found the

---

[24] 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. 416.912(b) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

[25] *McKean v. Colvin*, 150 F. Supp.3d 409, 418 (M.D. Pa, 2015).

opinions persuasive, yet he provided for some physical limitations of light exertion work based on Plaintiff's hearing testimony and objective medical evidence. *Id.*

Absent any medical opinions on Plaintiff's RFC, the ALJ was left to interpret the raw medical evidence on his own in finding Plaintiff capable of light work, stating:

> In terms of the claimant's alleged physical functional limitations, arguably, the claimant's diabetes mellitus causes no more than minimal functional limitations. However, to account for periods of low blood sugar and fatigue, the undersigned limited the claimant to light exertion work. A1C readings during the period at issue were 7.1% in April 2020, 7.6% in November 2020, and 6.6% in September 2021 (19F/69, 84, 94). Physical examinations during the period at issue were generally within normal limits, including normal gait and intact sensation (19F). While diabetic foot examinations in April 2020 and January 2021 were within normal limits, follow-up diabetic foot examinations in April and July 2021 were positive for diminished sensation in the bilateral feet (19F/4-5, 47-48, 55). The record also notes intermittent complaint with treatment recommendations, including noncompliance with medication and that she has not been checking her blood sugar levels (19F/1, 7, 13, 17, 31). Nevertheless, during periods of noncompliance she also denied any hypoglycemic events (19F/1, 7, 19). During periods that she was checking her blood sugar levels, particularly just in the month of June in 2020, she reported readings between 118-200 (19F/13, 19). The treatment records do not establish greater limitations due to this impairment.
>
> In terms of the claimant's left shoulder limitations, X-ray imaging of the left shoulder from June 2020 was positive for calcific subacromial bursitis, but preserved joint spaces and anatomic alignment (15F/7). While physical examinations during the period at issue were generally within normal limits, including normal and symmetric upper extremity strength and grossly intact sensation, physical examinations in June 2020 were positive for left shoulder tenderness with range of motion (19F). The claimant treated with physical therapy in June and July 2020

> and was discharged after ten visits, at which time she requested cancellation of remaining appointments because she reportedly felt that she could manage her case independently at home (19F/114-120). While she testified that she has problems with overhead activity, she also testified that she has no shoulder problems when mowing her lawn with a push mower. Additionally, she testified that she is not currently involved in treatment for her shoulder pain and that she does not take pain medication. The record does not establish greater physical functional limitations.

(Admin. Tr. 23; 9-2, p. 24).

In determining Plaintiff's RFC the ALJ also found that Plaintiff's own reporting of her activities of daily living suggested she could perform *sedentary* exertion work, stating:

> In addition to the above medical evidence of record, the undersigned considered the claimant's activities of daily living. The claimant reported that she prepares basic meals, performs light household chores, mows the lawn with a push mower, drives a motor vehicle, shops, and manages her personal finances (12E, Testimony). Additionally, the claimant has been working on a part-time basis and the record reflects that she has been working on her farm (19F). While the undersigned acknowledges that the claimant has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform sedentary exertion work within the above parameters on a sustained and continuous basis.

(Admin. Tr. 25; 9-2, p. 25).

However, Plaintiff's testimony of her own activities of daily living and the ALJ's reliance on his own interpretation of the medical record without a medical opinion on Plaintiff's RFC is not substantial evidence of an RFC of light work. This

is not the rare case where bare objective medical evidence, treatment records and non-medical evidence were sufficient for the ALJ to determine Plaintiff had an RFC of light work.[26] "Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional capacities that supports the ALJ's conclusion must be invoked."[27] There were no medical opinions, findings, or other medical evidence about Plaintiff's functional capacity in the record for the ALJ to use to support his determination that Plaintiff has an RFC of light work. "Instead, the ALJ seemingly interpreted the medical evidence of record, and substituted [his] own opinion for that of a medical one in arriving at Plaintiff's RFC."[28] The ALJ reached "a[n] RFC determination without the benefit of any medical opinion . . . ."[29] Thus , the ALJ's finding is not supported by substantial evidence and will be remanded.

### C.   PLAINTIFF'S REMAINING ARGUMENTS

In her remaining arguments, Plaintiff challenges the ALJ's failure to appoint a medical expert to fully develop the administrative record and provide proper

---

[26] *Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *5 (M.D. Pa. Mar. 11, 2014).
[27] *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013).
[28] *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, at *17 (M.D. Pa. Aug. 13, 2015).
[29] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *5 (M.D. Pa. Mar. 22, 2017).

limitations on account of mental impairments. Having concluded for the above-stated reasons that remand is appropriate, and because remand may produce different results on these claims, discussion of Plaintiff's remaining arguments is not necessary. Plaintiff is, however, free to raise these issues during the proceedings on remand.

## V.   CONCLUSION

Accordingly, for the foregoing reasons, this case will be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order will be issued.

Date: January 31, 2025                         BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge